JULIA LIBERATA SALAS, known as NELLY SALAS, Plaintiff and Appellant, *v.* JOHN DOE and RICHARD ROE, as heirs of DOMINGO TORRÉNS DÍAZ, Defendants and Appellees. JULIO DOMINGO SILVA TORRÉNS, Intervener.

No. 11100. Argued November 5, 1953.—Decided December 24, 1953.

*Félix Ochoteco Jr., Manuel Torres Reyes* and *Ernesto Juan Fonfrías,* for appellant. *José Sabater,* Judicial Administrator and counsel on behalf of the estate, *pro se. José Trías Monge, Attorney General, Aurelio Torres Braschi, Edgar S. Belaval,* and *M. Rodríguez Alberty,* for appellee. *Enrique Báez García* for intervener.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Based on the concubinage of her parents and on having enjoyed the uninterrupted possession of the status of natural daughter of the defendants' ancestor, Julia Liberata Salas, known as Nelly Salas, filed an action of filiation against John Doe and Richard Roe, as the unknown heirs of Domingo

Torréns Díaz. Alleging the nonexistence of such heirs, the People of Puerto Rico appeared of record pursuant to the provisions of §§ 912 and 913 of the Civil Code, 1930 ed.[1] The judicial administrator of the decedent's estate, previously appointed for that purpose by the court which entertained the action of filiation, also appeared of record and, like the People, objected to the claims of the complaint. The issue thus joined, a trial was held. When the case was submitted for decision, the court dismissed the complaint, rendering a well-reasoned opinion which stated the following findings of fact:

"1.—Domingo Torréns Díaz died intestate in Mayagüez, Puerto Rico, on October 26, 1949, without known relatives, his property being placed under judicial administration.

"2.—During the years 1913 and 1914 and in the city of Mayagüez, Domingo Torréns Díaz, a bachelor, had sexual relations with Ana Luisa Salas, a divorcee, from which a child was born on August 17, 1914, named Julia Liberata, plaintiff herein, and recorded with that name in the Civil Registry of Mayagüez as the natural daughter of her aforesaid mother.

"3.—During the aforesaid period Ana Luisa Salas lived first in a room of an outbuilding owned by Joaquín Tornabel at the Playa de Mayagüez and then at a house in the place known as 'El Tablón,' also of the Playa de Mayagüez, where the plaintiff was born. During all that time Torréns supported Ana Luisa Salas, visiting her and having sexual relations with her. This notwithstanding, and during all the time that said relations lasted, Torréns lived with his mother in a separate house at Concordia Street, in the place known as 'La Puntilla' of the city of Mayagüez.

---

[1] Sections 912 and 913 of the Civil Code, 1930 ed., provide:

"Section 912.—In default of persons who have the right to inherit in accordance with the preceding articles, the People of Puerto Rico shall take the inheritance and devote the property to the benefit of the University Fund.

"Section 913.—In order that the People of Puerto Rico may obtain possession of escheated inheritances, it must be declared entitled by escheat and the property must be adjudicated to it in default of lawful heirs by means of a judicial proceeding."

"4.—From plaintiff's birth and until she was four years old when Ana Luisa Salas left Mayagüez with the child, the plaintiff was in the uninterrupted possession of the status of natural daughter of her father as evidenced by direct acts, the same consisting in defraying the expenses at her birth, in attending to her financial needs, in presenting her in public as his daughter, taking her out and accepting on different occasions and to different persons that he was plaintiff's father.[2]

"5.—In Cataño where she went to live when she left Mayagüez with her daughter, Ana Luisa Salas married Leandro Ramírez Pagán on May 27, 1920. Then between the years 1925 and 1930 the mother died in Mayagüez, the exact date being unknown to her own daughter.

"6.—Ever since plaintiff can remember, that is, when she was six years old, she was known and called by the name of Nelly *Ramírez* Salas, and she continued using that name and surname continuously and uninterruptedly on every occasion, in all her activities, public and private, being enrolled at school with those names as well as having registered on two occasions for the general elections of 1936 and 1940 [3] with that name and surname on which two occasions she set forth that her parents were Leandro Ramírez Pagán and Ana Luisa Salas; plaintiff also used the name of Nelly Ramírez in business and in connection with a furniture store which she owned at Cataño, and plaintiff also registered her own children which she had by Manuel Rivera Miranda with the full name using Ramírez as the maternal name and she also used it as her last name in the death certificate of Manuel Rivera Miranda at the Demographic Registry.

"7.—Plaintiff at all times considered Leandro Ramírez as her father, inasmuch as ever since she was six years old, she always received from him the love and protection of a father, plaintiff having continued to use, even after knowing that he was not her father, his last name and to appear as his daughter in demonstration of gratitude for all that he had done for her."

---

[2] Regarding plaintiff's possession of status, the trial court again states in its conclusions of law:

"It is true that from her birth and until she was four years old plaintiff enjoyed the status of natural daughter of Domingo Torréns Díaz."

[3] It should say "1936 and 1944."

In its conclusions of law the trial court states in part the following:

"The evidence in the case does not show that Ana Luisa Salas was living in concubinage with Domingo Torréns Díaz during the pregnancy and at the time of plaintiff's birth . . .

"Nor does it show that plaintiff was during the ancestor's lifetime in the uninterrupted possession of the status of natural daughter of the latter within the scope of paragraph 2 of § 125 of the Civil Code, 1930 edition.

". . . . . . . .

". . . plaintiff lost the status of natural daughter from the age of six when she began to be known as the daughter of Leandro Ramírez Pagán, using his last name and giving it to her own children . . . in the case at bar it is not the acts of the father which destroy the status of natural daughter previously established in favor of the plaintiff but her own acts. . . On the other hand, we must conclude that the period of four years during which the plaintiff enjoyed her status as natural daughter of the ancestor, is not the reasonable period to which the authorities refer, if we consider it in the light of the period of over thirty-three years during which the plaintiff not only did not enjoy the status of natural daughter of the decedent but on the contrary appeared as the daughter of another man, continuously and uninterruptedly for the whole period."

Plaintiff contends on appeal that the trial court erred in deciding (1) that during her father's lifetime she was not in the uninterrupted possession of the status of natural daughter within the scope of paragraph 2 of § 125 of the Civil Code; (2) that notwithstanding having enjoyed the status of natural daughter of her father until she was four years old she lost that status at the age of six when she began to be known as the daughter of Leandro Ramírez Pagán; (3) that although it was true that she had acquired by the acts of her father the status of natural daughter, she had lost that status from the time she was six years old by reason of acts, not of her father, but her own; (4) that she only enjoyed the status of natural daughter for four years and that

this term is not the reasonable uninterrupted period to which the aforecited § 125 and the authorities refer; and (5) that her mother and father did not live in concubinage during the pregnancy of the former and at her birth.

 Like appellant, we shall also discuss jointly the first four errors assigned. The trial court undoubtedly erred in concluding that although the plaintiff enjoyed the uninterrupted possession of the status of natural daughter of her aforesaid father from her birth until she was four years old when her mother left Mayagüez with her, a status which was evidenced by his acts, her subsequent acts deprived her of her right to be acknowledged as the natural daughter of Domingo Torréns Díaz. There is in the record sufficient evidence tending to support the finding of the trial court to the effect that during the first four years of her life plaintiff enjoyed such uninterrupted possession.[4] But the fundamental question for determination in this suit is not—as happens in the majority of cases of this nature—whether or not she enjoyed such status but whether having during her first four years of life enjoyed the possession, plaintiff's subsequent acts deprived her of her right to acknowledgment which she now claims. We need not say again what her acts consisted of. They appear clearly in the sixth paragraph of the findings of fact of the trial court. Therefore, we shall now pass to discuss the question at issue.

---

[4] As regards the possession of status enjoyed by the plaintiff during the aforesaid four years, the following evidence, among others, appears in the record:

*Esperanza Martínez Maduro* testified that Torréns Díaz was very fond of the child, "he was always spoiling her. He was always bringing small presents to her."

*Encarnación González Soler de Ortiz* testified that Torréns Díaz treated the girl as his daughter, he fondled her, embraced her, caressed her, took her in his arms; "spoiled as a first child" and "on several occasions I saw him strolling with the girl . . . Three days after this girl was born he gave me four dollars for the midwife."

*José María Aponte* stated that Domingo Torréns told him that he had a daughter by Ana Luisa Salas. He told him very often, "because there were occasions when I was speaking with him and the girl would walk

Section 125 of the Civil Code, 1930 edition, provides inso-far as pertinent that:

"The father is obliged to recognize the natural child:

" . . . . . . .

"2. Where the child has uninterruptedly enjoyed the condition as of a natural child of the defendant father *justified by acts of the same father or of his family."* (Italics ours.)

The text copied leaves no room for doubt that the uninterrupted possession of the status of natural daughter shall be justified by acts of the father himself or of his family. The possession of status to which the former Section refers is the public reputation which a child bears with reference to its natural father, where this reputation is formed by direct acts of the father himself or of his family, demonstrative of the true acknowledgment, perfectly voluntary, free and spontaneous. *Vargas* v. *Jusino*, 71 P.R.R. 362, and cases cited at page 394. Judgments of the Supreme Court of Spain of June 26, 1903 (95 *Jur. Civ.* 1021) and March 24, 1927 (174 *Jur. Civ.* 417). In order that such possession may exist it is not necessary that the acts of acknowledgment begin from the birth of the claimant and continue until the action is brought. *Cruz* v. *Santiago*, 24 P.R.R. 100. It is enough that possession be enjoyed for a reasonable time. The period of four years in this case is reasonable. And once that possession exists, the subsequent acts of the father and of his family cannot make the right thus established dis-

---

by and he would see her and call her . . . the girl, his daughter, and he would give her a nickel or a penny . . . I asked him, "Is that your daughter?'; yes; she looks like you; Why don't you take her home with you?; her mother will not give her to me to take her home."

*Dominga Carrero Vda. de Vals* testified that Domingo Torréns admitted that plaintiff was his daughter. The witness told him—referring to the plaintiff—"Look, that girl is your daughter." He would admit it. "Yes, I know she is my daughter. Why don't you give her something? Because . . . but I know she is my daughter. Look, give me money to buy her shoes." He gave me money for the .shoes. After that he continued going to my house and I would speak to him of the child when he would visit me and then on another occasion he gave me a dollar to buy her shoes." The girl was four years old when Ana Luisa (the mother) left Mayagüez with her.

appear. Neither can the subsequent acts of the claimant cause it to vanish. In fact by express provision of the statute —see § 125, *supra*—in determining the possession of status, the acts to be proved, we repeat, shall be those of the father or of his family and not those of the one claiming filiation. The acts of the latter, no matter .what they are, can never give rise to such status.

If at the time that plaintiff was four years old, an action of filiation, based on the possession of status would have been brought, and the evidence which would have been introduced and which the court would have had before it would have been the same as presented in this case, or similar or identical with it, there is not the slightest doubt that the judgment would have favored the plaintiff. This being so, we don't see why we should now reach a different conclusion. Pursuant to our ruling in *Vázquez* v. *Boyrié*, 52 P.R.R. 826, 835 "their failure to become reconciled does not imply the loss of the status which one party had conferred and the other had acquired. The failure of the parent to recognize his children in writing before his death does not destroy his prior acts." In *Bianchi* v. *Heirs of Bianchi*, 67 P.R.R. 557, 565, we cite those words with approval. And in *Toro* v. *Ríos*, 68 P.R.R. 704, 706, citing *Colón* v. *Heirs of Tristani*, 44 P.R.R. 163, 174 we stated that "once these series of acts have been carried out for a reasonable length of time, the father should not be allowed to revoke with his subsequent acts the acknowledgment priorly made by him." We reaffirm that criterion. If by his subsequent acts the father is not allowed to revoke the acknowledgment previously made by him, how would it be possible that subsequent acts of the person who wants acknowledgment could destroy such legal status?

Since the first four errors assigned were committed and we must therefore reverse the judgment appealed from, we need not discuss the fifth assignment as to whether or not concubinage existed.

544

The judgment appealed from shall be reversed and plaintiff declared the natural acknowledged daughter of Domingo Torréns Díaz with all the rights inherent in that condition.